UNITED STATES OF DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
DISTRICT
COURT OF APPEALS D.C. CIRCUIT
**FILED**

2006 AUG -2  PM 4:48  AUG - 2 2006

FILING DEPOSIT  **NANCY MAYER WHITTINGTON, CLERK**
U.S. DISTRICT COURT

| | |
|---|---|
| FOOD FOR THE HUNGRY, INC.,<br>A California corporation<br>1224 East Washington Street<br>Phoenix, AZ 85034 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| LINDA M. SPRINGER,<br>In her capacity as Director of<br>United States Office of<br>Personnel Management<br>1900E Street NW<br>Washington, DC 20415-1000 | )<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

CASE NUMBER    1:06CV01370

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 08/■/2006

## MOTION FOR A TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Based upon the verified complaint and the Memorandum of Points and Authorities submitted herewith, plaintiff, Food for the Hungry, respectfully moves the Court as follows:

1.    To issue a temporary restraining order restraining the exclusion of Food for the Hungry from the 2006 Combined Federal Campaign ("CFC") and suspending *pendente lite* the final administrative determination, dated July 21, 2006, by the Director of the Office of Personnel Management ("Director") denying plaintiff's application for inclusion in the 2006 CFC;

2.    To issue a preliminary injunction suspending (a) the aforesaid final administrative determination and (b) mandating inclusion of Food for the Hungry in the 2006 CFC, pending final hearing and determination of this cause; and

553954.2

3

3.     To issue an order compelling defendant to show cause before this Court why a preliminary injunction should not be issued embracing the terms and conditions set forth above.

Plaintiff notes that despite receiving its appeal on or about May 8, 2006, OPM did not respond with its final determination until July 21, 2006 when it mailed a letter which was received on July 26, 2006, just days before the CFC National List was to be finalized. This gave Food for the Hungry only a very brief period of time in which to retain counsel and prepare pleadings, resulting in significant hardship to Food for the Hungry.

For the reasons stated in the Complaint and in the attached Memorandum of Points and Authorities, plaintiff submits that defendant's decision to exclude Food for the Hungry from the 2006 CFC was arbitrary, capricious, and an abuse of discretion and violated the Adminstrative Procedure Act and Food for the Hungry' First Amendment rights. Unless this Court enjoins the denial of Food for the Hungry's application for inclusion in the 2006 CFC, Food for the Hungry will be immediately and irreparably harmed, for which injury there exists no adequate remedy at law.

Food for the Hungry respectfully requests an expedited hearing on this motion.

Respectfully submitted,

Stephen S. Kaye (D.C. Bar No. 292532)
Bryan Cave LLP
700 Thirteenth Street NW
Washington, D.C. 20005-3960
Phone: (202) 508-6000
Fax: (202) 508-6200

*Counsel for Plaintiff*

UNITED STATES OF DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT

FILING DEPOSITORY

AUG - 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2006 AUG -2  PM 4: 48

| | |
|---|---|
| FOOD FOR THE HUNGRY, INC., <br> A California corporation <br> 1224 East Washington Street <br> Phoenix, AZ 85034 <br><br> Plaintiff, <br><br> v. <br><br> LINDA M. SPRINGER, <br> In her capacity as Director of <br> United States Office of <br> Personnel Management <br> 1900E Street NW <br> Washington, DC 20415-1000 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br><br> Civil Action No.  **06 1370** |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION FOR A
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### The Combined Federal Campaign

The Combined Federal Campaign ("CFC") is the exclusive means for federal employees to make charitable contributions at their places of work. *See* 5 C.F.R. § 950.102 (a); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988). In 2005, federal civilian and postal employees and military personnel donated approximately $268.5 million to the 2005 CFC for the benefit of participating charities. *See* OPM News Release, April 21, 2006. The Director (the "Director") of the Office of Personnel Management (the "OPM") supervises the national CFC (5 C.F.R. § 950.102) and also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the CFC in local communities. *See* 5 C.F.R. § 950.103 (a) and (b); *Planned Parenthood*, 691 F. Supp. at 449.

553953.3                                          1

Contributions are made either directly to the CFC or are withheld from participating employees' paychecks. 5 C.F.R. § 950.103. Each year, the Director compiles a list of charities eligible to participate nationally in all local campaigns (the "National List"), and each LFCC includes the National List charities in brochures that, along with a pledge card, are distributed to eligible federal employees. *See* 5 C.F.R. §§ 950.105, 950.201.

To be included in the CFC, a charity must apply each year to the OPM. Among other things, it must certify that it provides services or benefits in at least 15 states or a foreign country over the three-year period immediately preceding the campaign year involved and that it is recognized by the Internal Revenue Service as a tax-exempt organization under section 501(c)(3) of the Internal Revenue Code of 1986 ("Code"). *See* 5 C.F.R. § 950.202.

On or about July 31st of each year, the Director distributes the National List by posting it on the OPM web site. Subject to litigation such as this, the decision by the Director is final as to which charities are admitted to the CFC as National List charities. This year, the publication of the National List has been temporarily delayed because of litigation filed by various charities that were excluded from the National List, but on or about August 3, 2006, absent the issuance of a temporary restraining order by this Court, the National List will be published and the LFCCs will commence the printing of brochures for distribution to federal employees. Food for the Hungry's 2006 fundraising efforts will be seriously harmed if it is not included in the National List.

Food for the Hungry has been included on the National List each year since 1996. This year, however, the OPM excluded Food for the Hungry because it allegedly did not provide satisfactorily segregated financial information regarding its affiliate, Food for the Hungry Foundation (the "Foundation"). At issue is the OPM's recent interpretation of a vague regulation

that requires a charity to satisfy "public accountability standards." C.F.R. § 950.203. Food for the Hungry along with this court and the thousands of federal employees who wish to contribute to respectable charities are confronted with this remarkable inconsistency: Public law declares that OPM must allow a small charity to qualify for the CFC with nothing more than a "copy of its federal tax return, and without complying with any independent auditing requirements that would otherwise apply" (Pub. L. 100-202, Sec. 101(m), Dec. 22, 1987), but, at the same time, the OPM has failed to provide any guidance as to what it requires from a *bona fide* charity, such as Food for the Hungry, that provides audited consolidated financial statements that are prepared to the highest standards of the US government and in accordance with the principles of the American Institute of Certified Public Accountants. Moreover, when OPM receives audited consolidated financial statements, it treats them in an arbitrary and capricious manner.

Food for the Hungry appeals from the informal agency adjudication that is reviewable under § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Pursuant to the APA, the OPM's action must be set aside "if it fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....'" 5 U.S.C. § 706(2)(A); *Olenhouse v. Commodity Credit Corporation*, 42 F. 3d 1560 (10th Cir. 1994) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971)). A reviewing court, in applying the "arbitrary or capricious" standard, asks whether the agency engaged in reasoned decision making. *Clifton Power Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here it is clear that the agency did not.

Food for the Hungry is a highly respected non-profit tax exempt 501(c)(3) charity and qualifies in every respect for the National List. During the past ten years, thousands of federal

employees have selected Food for the Hungry to be the beneficiary of their CFC contributions. Since 1996, Food for the Hungry has received total CFC contributions in excess of $1.3 million, with annual amounts of up to $170,000. Last year, Food for the Hungry received more than $96,000.00 through the CFC. Food for the Hungry's participation in the CFC over the years has provided a significant and reliable revenue stream upon which it depends in fulfilling its charitable mission. In reliance on the OPM's prior approvals, and in view of its ten years of participation in the CFC, Food for the Hungry anticipated and budgeted for contributions from federal employees and military personnel through the 2006 CFC. Complaint ¶ 14.

Food for the Hungry is an advocate for the poor within the United States. In addition, Food for the Hungry collaborates with the United States Agency for International Development ("USAID") to promote economic and humanitarian assistance worldwide. Through more than 2,000 staff members, Food for the Hungry also serves the poor in more than 45 developing countries by providing parental counseling, medical checkups, education, school supplies, new skills development and education about AIDS; rehabilitating school buildings; promoting micro-enterprise, natural resource management, water and sanitation and community health; transferring farming technologies to improve irrigation, agricultural production, forestry and soil conservation; preventing malnutrition, illness, and poor sanitation practices; performing health assessments, administering first-aid treatment and training local health-care representatives; drilling wells, constructing dams, water pans, and catchment systems; and educating people about property hygiene. For over 20 years, Food for the Hungry has satisfied the rigorous financial accountability requirements of the U.S. government in order to receive commodities from USAID. During its 2004 fiscal year, Food for the Hungry received commodities valued at more than $7,000,000.00 through USAID. On June 20, 2006, Benjamin Homan, President of

Food for the Hungry, was appointed by President Bush to the Helping to Enhance the Livelihood of People (HELP) Around the Globe Commission, the purpose of which is to define new ways to make foreign assistance more effective for U.S. taxpayers and the recipients. Complaint ¶ 8.

## Food for the Hungry and Its Application for the 2006 CFC

Despite its reputation, each year Food for the Hungry must run the gantlet of the OPM, the agency of the executive branch of the federal government that is charged with interpreting regulations (5 C.F.R. Part 950) governing the CFC. For assistance, Food for the Hungry turns to Christian Service Charities, a highly-regarded and OPM-approved federated organization which represents several tax-exempt Christian charitable organizations in applying for the CFC National List. Each year the OPM-approved national federations, such as Christian Service Charities, screen and submit to the OPM lists of their members that are eligible to participate in the CFC, and generally the individual members of the federated association are not required to submit formal applications to OPM unless the OPM so requests. This year, Christian Service Charities screened and timely filed the 2006 CFC application for Food for the Hungry (the "2006 Application") and other charities as a consolidated application. The OPM then selected Christian Services Charities for a full review of the individual applications of all of its members and requested a copy of all of the individual applications, including that of Food for the Hungry.

Christian Service Charities responded promptly with a copy of Food for the Hungry's 2006 individual application, including its audited financial statements, annual report and IRS Form 990. (*See* Exhibit A.) However, on May 4, 2006, the OPM denied Food for the Hungry's 2006 Application stating:

> *Attachment C of the application is a consolidated audit for Food for the Hungry and Food for the Hungry Foundation. The audit does not contain a separate schedule for the applicant, as required*

*by 5 C.F.R. § 950.203(a)(2), CFC Memorandum 2004-10 (attached), and item 6 of the application instructions.*

On May 17, 2006, Christian Service Charities filed a timely appeal (Exhibit C) on behalf of Food for the Hungry and asserted that, in compliance with the relevant regulations, it had provided all relevant information, including the complete audited financial statement for Food for the Hungry.

Time went by without a response. Finally, on July 19, 2006, counsel for Christian Service Charities wrote a letter to the OPM to request a meeting to discuss the pending appeal. That letter "crossed in the mail" with the long overdue response from OPM dated July 21, 2006 (Exhibit D) in which the OPM advised Christian Service Charities that it had denied the appeal of Food for the Hungry. The denial offered no explanation except to say "CFC regulations also require that each applicant organization individually meet all of the eligibility criteria and provide independent documentation (5 C.F.R. § 950.401(j))." *Id.*

Remarkably, in the same letter, the OPM stated that it had waived, for a period of one year, the independent documentation requirements for another charity because that charity's affiliated entities "represent a very small proportion of revenues and expenses." *Id.* Moreover, on that same date, in an appeal filed on behalf of another charity that was also represented by Christian Service Charities and had submitted consolidated financial statements, the OPM approved the charity's participation in the 2006 CFC even though the financial statements of that charity showed that the assets of its affiliates represented over 40% of the combined assets of the organization. Complaint __.

The denial letter regarding Food for the Hungry gave no indication that the OPM had considered the financial data provided by Food for the Hungry, which plainly shows that its Foundation represents a very small proportion of its revenues, or that the assets of its Foundation

account for less than 16% of the combined assets.  Moreover, neither the denial letter nor the relevant regulations provide any guidance whatsoever as to what percentage of assets may be held by an affiliate, what constitutes a "very small portion of revenues and expenses" or the basis upon which one charity may qualify for a one-year grace period while another does not.

On July 25, 2006, OPM also denied the request for a meeting regarding the appeal filed on behalf of Food for the Hungry. (*See* Exhibit E.)

### Food for the Hungry's Audited Statements Satisfied the Requirements of the Law.

The purpose of 5 C.F.R. § 950.203 is to ensure that organizations "are portraying accurately their programs and benefits." 5 C.F.R. 950.203(a).  To that end, several financial standards must be met.  The organization must be able to certify that it is a human health and welfare organization providing real "services, benefits or assistance." *Id.*  Food for the Hungry satisfies this requirement with flying colors.  Over the years, it has achieved an enviable reputation in the U.S. and in the world.  Indeed, despite the far more rigorous requirements needed to qualify for USAID programs, Food for the Hungry has qualified repeatedly and has received increasing amounts of USAID assistance over the past 20 years. Complaint ¶ 7.

The public accountability standards also require proof of the charity's ability to deliver on its promises.  The charity's total revenue spent on administrative and fundraising must not exceed 25% of its total revenue without a satisfactory explanation and plan to reduce these expenses.  5 C.F.R. § 950.203(4).  Indeed, most of the public accountability standards are directed at this important issue.  *Id.*  Again, Food for the Hungry qualifies hands-down.  Its percentage of revenue devoted to fundraising and administration is less than 7%.  Its 2006 Application clearly proved this. (*See* Exhibit A, ¶ 8.)

In order to allow OPM to verify the applicant's representations on this and other important issues, 5 C.F.R. § 950.203(a)(2) expressly requires that the organization "certify that it accounts for its funds in accordance with generally accepted accounting principles and that an audit of the organization's fiscal operations is completed annually by an independent certified public accountant in accordance with generally accepted auditing standards. Such audit must show expenses by function. A copy of the organization's most recent annual audit must be included with the application." Food for the Hungry met this test as well.

The text of this regulation does not require a separate schedule for an applicant that has an affiliate. Consolidated financial statements are not prohibited by the regulation. However, in a 2004 official Memorandum, the OPM conjured up a new requirement for the 2005 campaign. That Memorandum stated that "combined and consolidated audits are not accepted unless the applicant's financial information is reflected in a separate audited combining or consolidating schedule that breaks out the information for the applicant." (CFC Memorandum 2004-10). Unlike other statements in that same Memorandum, this new interpretation was not initially made applicable to all subsequent CFC campaigns. (See CFC Memorandum 2004-10). Apparently, it was a trial balloon. Then, for 2006, the OPM revised its official Application instructions and incorporated the text of the Memorandum.

Although the relevant financial facts regarding Food for the Hungry and its affiliated Foundation were not stated in two separate columns, the audited financial statements that Food for the Hungry submitted to OPM included explanatory notes that were prepared in a traditional CPA format and explained the relationship between the two affiliated entities. The consolidated audited statement listed total revenue in the amount of $96,562,852. The attached auditor's notes stated that of that amount, the Foundation contributed only $2.5 million. Note 1, Pg. 6.

The affiliate's revenue of $2.5 million amounts to less than 3% of total revenue.    The consolidated audited statement also shows that for the year ended September 30, 2004, the Foundation had assets of $1,701,358 and liabilities of $1,701,358 and that total consolidated assets and liabilities amounted to $10,653,718. Thus, less than 16% of total assets are held by the Foundation.  In addition, the Financial Statements disclose that, only about 3% of Food for the Hungry's total  funding is for administrative functions, and less than 4% is for fundraising. That leaves more than 93% of contributions to be devoted to delivering goods and services to the poor.  The auditors' notes establish that Food for the Hungry has not achieved this result with "smoke and mirrors" as some charities are wont to do, but has "implemented the American Institute of Certified Public Accountants' Statement of Position 98-2, Accounting for Costs of Non-Profit Organizations and State and Local Government Entities that include Fundraising" and that Food for the Hungry's policy is to allocate "all costs of activities which have a fundraising component as 100 percent to fundraising." *Id.* at Note 2, Pg. 11.  Furthermore, the notes disclosed that the Foundation "is organized and operated under the control and for the benefit of Food for the Hungry" (Note 1, Pg. 6) but that nothing was being hidden, stating: "The Consolidated Financial Statements include the operations of Food for the Hungry, Inc. and Food for the Hungry Foundation, Inc." and "all significant inter-company balances and transactions have been eliminated." *Id.* at Note 1, Pg. 7.  Finally, and perhaps the most important fact to consider is this:  the auditor's notes state that financial statements were prepared not only to satisfy the OPM requirements for statements prepared in accordance with U.S. generally accepted accounting principles, but were conducted in accordance with "Government Auditing Standards issued by the Comptroller General of the United States" (*Id.*, transmitting letter) and that those standards (the higher standards of the Comptroller General) required that we plan and

perform the audits to obtain reasonable assurance about whether the consolidated financial statements <u>are free of material misstatements</u>." *Id.* (emphasis added).

### Food for the Hungry is Entitled to Injunctive Relief.

Food for the Hungry is entitled to preliminary injunctive relief because it will demonstrate (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) that no other parties will be harmed if temporary relief is granted; and (iv) that the issuance of the injunction will serve the public interest. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F. 2d 921, 925 (D.C.Cir. 1958); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).[1]

### The OPM's Denial Abridges Food for the Hungry's First Amendment Rights.

Food for the Hungry's right to solicit federal employees through participation in the CFC is protected by the First Amendment. *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788 (1985).

> The brief statements in the CFC literature directly advance the speaker's interest in informing readers about its existence and goals. Moreover, an employee's contribution in response to a request for funds functions as a general expression of support for the recipient and its views.... [T]he CFC literature facilitates the dissemination of views and ideas by directing employees to the

---

[1] Food for the Hungry is not required to prevail on each of these factors. Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C. Cir. 1985).

> soliciting agency to obtain more extensive information.... Finally, without the funds obtained from solicitation in various form, the organization's continuing ability to communicate its ideas and goals may be jeopardized.... Thus, the nexus between solicitation and the communication of information and advocacy of causes is present in the CFC as in other contexts.

*Id.* at 3447.

### The OPM Regulations Are Vague and Should Not Be Construed so as to Exclude Food for the Hungry.

This Court considered a similar request for relief in *National Center on Missing and Exploited Children v. Horner*, 699 F.Supp. 333 (D.D.C. 1988). The case arose under a vague prior version of 5 C.F.R. § 950.203 which, as part of the OPM's public accountability standards, required that the charity receive "at least 50 percent of its total support and revenues from sources other than the Federal government or at least 20 percent of its total support and revenue from voluntary contributions from the general public." *NCMEC*, 699 F.Supp. at 333 n.1. The facts at issue were similar. After a long history of participating in the CFC, the OPM denied one of NCMEC's annual applications because of its relationship with its affiliated organization, the National Endowment for the Protection of Children (the "Endowment"). As in the case of Food for the Hungry, NCMEC deposited some contributions with its affiliate which in turn funneled funds back to NCMEC. In the case of Food for the Hungry, the financial connection with its affiliate is *de minimus*, but <u>almost half</u> of the funds that NCMEC considered to be derived from the public were in fact provided by its affiliated Endowment. Yet the Court issued the preliminary injunction and restrained publication of the National List without including NCMEC.

The Court held that, as applied to these facts, the language of the OPM regulations was "clearly ambiguous." It noted that the accountability standards "were intended to protect federal employees against fraud and *not to serve as a means of excluding groups that otherwise would*

*be eligible.*" *NCMEC*, 699 F. Supp. at 336 (quoting H.R. Report 100-498, 100th Cong., 1st Sess., at 1173 (1987)) (*emphasis in original*).  The Court recognized that although public accountability standards might be essential to "prohibit a large organization from supporting, through its own treasury, the activities of far-flung affiliated organizations," that was not the case with NCMEC and its Endowment. *Id.* at 337.  The court also relied upon the fact that during prior years, NCMEC had operated in a fashion identical to that which the OPM now questioned, and in each of those years, its application had been approved.  In conclusion, the Court stated: "We know that the organization is a highly regarded institution and performs an extremely valuable community service.... Such an organization is entitled to be governed by regulations that are clear and unambiguous." *Id.* at 338.

Food for the Hungry is also entitled to be governed by unambiguous regulations that are applied in a consistent manner, not arbitrarily or capriciously, particularly when it has submitted financial statements that conform to the standards set forth in the OPM regulations and to the more rigorous Government Auditing Standards issued by the Comptroller General of the United States; when it has established an enviable ratio of administrative and fundraising expenses compared to overall expenditures to deliver program services to the poor; when its method of allocating costs of fundraising and adminstation are consistent with the standards of the American Institute of Certified Public Accountants; and when it is already working in collaboration with Federal programs such as USAID.

### Denial of Food for the Hungry's Application Violated Federal Law.

Denying Food for the Hungry's application also violated Federal Law.  Public Law 100-202 provides, in part, that the "public accountability standards shall remain similar to the standards which were by regulation established with respect to the 1984 – 1987 Combined

Federal Campaigns, except that the Office of Personnel Management shall prescribe regulations under which a voluntary agency or federated group which does not exceed a certain size (as established under such regulations) may submit a copy of an appropriate Federal tax return, rather than complying with any independent auditing requirements which would otherwise apply." P.L No. 100-202, § 101(m) (codified at 5 U.S.C. § 1101, n.). Congress thus mandated that the then-existing regulations were to continue to govern, except that the requirements for audits could be relaxed in some instances.

OPM has done by memoranda and by application instructions what it could not do by regulation. Although the regulations in 1984 – 1987 did not and the regulations do not now prohibit consolidated financial statements, Food for the Hungry's application was rejected because OPM imposed a new, non-regulatory requirement—a charity cannot submit consolidated financial statements. This is clearly contrary to the Congressional mandate. Congress instructed OPM to allow certain charities to participate in the CFC even if they did not have an independent audit report. Although Congress wanted OPM to relax its independent audit requirements, OPM responded by tightening the requirements—through a memorandum and application instructions—to bar a charity from using its independent audit if that audit presented results that were consolidated with those of its affiliate. OPM thus is not applying public accountability standards that are similar to the ones in effect in 1984 – 1987 and is acting contrary to law.

### Denial of Food for the Hungry's Application was Arbitrary and Capricious.

Under the "arbitrary or capricious" standard, the court reviews an agency's decision making process and determines whether the agency examined "the relevant data and articulate[d] a satisfactory explanation for its action *including a rational connection between the facts found*

*and the choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S.

29, 43 (1983) (emphasis added.); *Touris Records, Inc. v. Drug Enforcement Administration,* 259

F.3d 731 (D.C. Cir. 2001). Agency action will be set aside "if the agency relied on factors which

Congress has not intended for it to consider, entirely failed to consider an important aspect of the

problem, *offered an explanation for its decision that runs counter to the evidence before the*

*agency,* or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise." *Motor Vehicle Manufacturers,* 463 U.S. at 43 (emphasis added).    The

grounds upon which the agency made its decision must be clearly articulated and a reasoned

explanation for its action must appear in the record.  The court is required to conduct a plenary

review of the record to ascertain whether the agency's action is sustained by the record and

supported by "substantial evidence." *Association of Data Processing v. Board of Governors,*

745 F.2d 677, 683-84 (D.C. Cir. 1984).  The agency's decision, therefore, must be supported by

facts found in the record:

> When the arbitrary or capricious standard is performing that
> function of assuring factual support, there is no substantive
> difference between what it requires and what would be required by
> the substantial evidence test [applicable to formal adjudication
> under § 706(2)(E)], since it is impossible to conceive of a
> "nonarbitrary" factual judgment supported only by evidence that is
> not substantial in the APA sense.

*Id.* at 683 (emphasis in original).

    The OPM Director acted without authority and in an arbitrary and capricious manner in

rejecting Food for the Hungry's application for inclusion in the 2006 CFC.  In the May 4, 2006

letter, the Director rejected Food for the Hungry's 2006 CFC application, stating merely that "the

CFC regulations require that each applicant organization individually meet all of the eligibility

criteria and provide independent documentation."  (Exhibit B).  This rationale is incorrect.  As

noted  above,  the  regulation  says  nothing  about  "independent"  documentation.    That

"requirement" comes from an OPM interpretation that was first expressed in its 2004 Mcmorandum and later in its revised Application instructions. Moreover, Food for the Hungry did provide "independent" documentation: an audit report from an independent accounting firm. The OPM rationale also ignores Food for the Hungry's thorough compliance with the strict public accountability standards of the Federal government.

Moreover, as described above, Food for the Hungry did provide substantial information regarding its affiliates finances and its contribution to the overall financial position of the organization. Nothing in the record suggests that this was considered. Instead, the mere failure to set such information out on a separate sheet of paper seemingly was the agency's arbitrary basis for acting.

Even if consolidated financial statements were prohibited by the regulation, failure to adhere to every component of it does not mandate exclusion from the CFC National List. The purpose of the regulation at issue is to "insure organizations wishing to solicit donations from federal employees ... are portraying accurately their programs and benefits...." 5 C.F.R. § 950.203(a). The regulation only says that CFC "may" judge it a failure and "may" rule that the charity is ineligible. *Id.* at § 950.203(b). CFC thus has discretion, and it exercised that discretion in favor of other organizations while arbitrarily and capriciously denying the application of Food for the Hungry. There is no reasonable explanation in the record for excluding Food for the Hungry. The OPM just mechanically applied a new policy banning the use of consolidated financial statements without any assessment of whether the information submitted by Food for the Hungry accurately portrayed the programs and benefits it offers. That is *per se* an arbitrary and capricious action.

OPM's decision was arbitrary and capricious, and there is a substantial likelihood that Food for the Hungry will succeed on the merits.

### Without Injunctive Relief, Food for the Hungry Will Suffer Irreparable Injury.

The posting of the National List for the 2006 CFC on the OPM website is imminent. Immediately thereafter, the LFCCs will publish this list in a brochure which will be relied upon by federal employees in deciding which charities to support through direct contributions and payroll deductions. Exclusion of Food for the Hungry from the National List for the 2006 CFC will cause substantial economic harm and other injuries which cannot be rectified. Food for the Hungry will be deprived of the exercise of its First Amendment right to communicate its message to millions of federal employees. Those employees will be deprived of the opportunity to exercise their own First Amendment rights by providing financial support for its efforts to help the poor. Given the large number of federal employees located in every state and abroad, Food for the Hungry cannot solicit contributions directly from this same audience without incurring exorbitant costs. Moreover, Food for the Hungry cannot recover damages from the government for the lost contributions. Such a loss is difficult if not impossible to quantify, and Food for the Hungry has no remedy at law as the result of the federal government's immunity from damages for these types of suits. See, e.g., *Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990). The losses described herein are real, immediate and irretrievable absent preliminary injunctive relief.

### Third Parties Will Not Suffer Harm if Preliminary Injunctive Relief Is Granted.

The requested relief will do no harm, neither to the OPM nor to anyone. For a brief period of time, until publication of the National List, the number of charities eligible to participate in the CFC easily can be expanded to include Food for the Hungry. The brochures have yet to be printed and distributed, so no additional expenses for reprinting the brochures

need be incurred. No harm can arise from including Food for the Hungry on the National List where it has been for the past ten years and clearly deserves to be again.

### Preliminary Injunctive Relief Will Serve the Public Interest.

The public interest is undoubtedly served by Food for the Hungry's participation in the CFC. Millions of federal employees are permitted to participate in its charitable activities, and Food for the Hungry's participation in the CFC will guarantee its ability to promote the objectives of USAID and to provide services to the poor throughout the world. Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the Defendant's arbitrary denial of Food for the Hungry's application was based on vague and imprecise standards and on reasons not supported by the record. Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

For the reasons stated herein, Food for the Hungry respectfully requests this Court to order the requested preliminary injunctive relief.

Respectfully submitted,

Stephen S. Kaye (D.C. Bar No. 292532)
Bryan Cave LLP
700 Thirteenth Street NW
Washington, D.C. 20005-3960
Phone: (202) 508-6000
Fax: (202) 508-6200

*Counsel for Plaintiff*

**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUG - 2 2006

**NANCY** MAYER WHITTINGTON, **CLERK**
U.S. DISTRICT COURT

FOOD FOR THE HUNGRY, INC.,            )
a California corporation               )
1224 East Washington Street           )
Phoenix, AZ  85034                     )
                                       )
                  Plaintiff,           )
                                       )
        v.                             )        Civil Action No.      **06 1370**
                                       )
LINDA M. SPRINGER,                     )
in her capacity as Director of         )
United States Office of                )
Personnel Management                   )
1900E Street NW                        )
Washington, DC 20415-1000             )
                                       )
                  Defendant.           )

## CERTIFICATE OF COUNSEL PURSUANT TO LCvR 65.1

I, Stephen S. Kaye, counsel for Food for the Hungry, certify that I notified the office of

James Green, Esq., Associate General Counsel of the United States Office of Personnel

Management, by telephone during the afternoon of August 1, 2006, that Plaintiff was likely to seek

this relief and confirmed to him at approximately 12:55 p..m. on August 2, 2006, that the Complaint

and Motion for Temporary Restraining Order and Preliminary Injunction in this matter would be

filed as early as possible on August 2, 2006.

I further advised Mr. Green that he would be notified of the time and date set by the Court

for a hearing, if any is to be held.

I am deliveriing to Mr. Green, U.S. Office of Personnel Management, 1900 E St. NW, Room

7353, Washington, DC 20415-1000, by messenger, a copy of the Complaint and accompanying

exhibits, Motion for Temporary Restraining Order and Preliminary Injunction, Memorandum of

296852.1

Points and Authorities, and proposed Order in this matter, along with a copy of this certificate. I also have advised Mr. Keith Morgan, Deputy United States Attorney, of the filing of this action and am delivering a copy of the materials to the Office of the United States Attorney.

Respectfully submitted,

Stephen S. Kaye (D.C. Bar No. 292532)
Bryan Cave LLP
700 Thirteenth Street NW
Washington, D.C. 20005-3960
Phone: (202) 508-6000
Fax: (202) 508-6200

*Counsel for Plaintiff*